OPINION OF THE COURT
Bellacosa, J.
This prosecution stems from two separate incidents of alleged bribery by defendant of a municipal fire safety inspector and an undercover investigator. The amounts involved, $310 and $100, are relatively petty. However, the object of these municipal-corruption-type crimes — official disregard of fire safety violations in two Manhattan hotels — is potentially very grave.
The appeal by a grant of leave from a Judge of this Court is from an Appellate Division order afiirming the conviction on both bribery counts after a jury trial. Two primary issues are presented. The first, which the People concede is an open question, is whether the key phrase "agreement or understanding” in Penal Law § 200.00 means only "intent to influence”, or whether its plain language imposes on the People the requirement to prove something more than simple intent. Because we acknowledge and give effect to the Legislature’s addition of a new "gist” (People v Harper, 75 NY2d 313, 317) *173 to the statute that is distinct from simple intent, we must also determine whether the People presented evidence sufficient to avoid dismissal of the charge irrespective of error in the instruction to the jury on this point.
The second count of the conviction against defendant implicates the separate legal issue of whether the People presented independent prima facie evidence of a conspiracy justifying use of a coconspirator’s recorded hearsay evidence against defendant. We conclude that no prima facie proof of a conspiracy was made out at any time during the trial warranting admission of the recorded hearsay statements of the alleged coconspirator. The order of the Appellate Division should be reversed and both counts of bribery in the third degree should be dismissed.
Defendant, Tran, was the fire safety director of two Manhattan hotels with outstanding fire safety violations. On February 2, 1989, an inspector from the New York City Department of Buildings inspected the Carter Hotel. The inspector told defendant that a new violation would be reported. Defendant then put $310 into the shirt pocket of the inspector, who immediately removed the money and said he could not accept it and that the violation would still be reported. The inspector testified that defendant told him to keep the money "even if [he] wrote a violation,” and "do whatever [he] had to do, but keep [the money].” The inspector left and promptly turned the money over to the New York City Department of Investigation, Inspector General’s office. That is the whole of the People’s evidence on count one.
On March 16, 1989, an investigator from the Department of Investigation, Inspector General’s office, went to the second hotel, the Longacre, posing as an inspector from the Department of Buildings. After appearing to conduct an inspection, the investigator informed defendant that the hotel had failed to meet certain legal requirements. He also told defendant that he wanted to help him out but was obliged to report the violation. He added that he would hold off writing the violation for the rest of the day because he had other places to go. Defendant said and did nothing in response. When the investigator said he would return later but would telephone first, defendant urged him to return even if defendant was not available. Defendant was not present when the investigator returned. Instead, a hotel employee, Chu, who had been present when the investigator was there earlier, asked the *174 investigator to wait for defendant. When the investigator said he could not wait, Chu gave him a $100 bill. By means of the investigator’s hidden tape recorder, the entire dialogue between the investigator and Chu was captured. A portion of the tape recording reflects that when the investigator asked what the $100 was for, Chu replied: "I don’t know. Maybe, you clear up for him something here, about Local Law 16. That’s what your here before [as in transcript].” Chu said she would tell defendant to call the investigator, but no further contact was made among any of the participants.
Defendant was subsequently charged with two counts of bribery in the third degree, one as to each incident. At the jury trial, defendant objected to the admission of the taped hearsay statements of Chu, claiming that a prima facie case of conspiracy had not been presented or proven and, absent that, the hearsay statements could not be admitted under the coconspirator exception. The trial court allowed the People to play the full tape recording of the conversation between the investigator and Chu, including both hearsay and verbal act statements, expressly reserving its decision on defendant’s objection.
Following the close of the People’s case, defense counsel moved to dismiss both counts for failure of proof. The trial court denied the motion, stating that while there was no "agreement,” there may have been an "understanding,” and that the presence or absence of an understanding constituted an issue of fact for the jury. The court further indicated that an "understanding” could consist of an "expectancy * * * that hopefully [the inspector] would not file” the violation. The defense presented no evidence at trial.
The trial court instructed the jury that the words "upon an agreement or understanding” refer to the defendant’s understanding. The court added that those words "as applied to this case, are equivalent to the words, 'with intent to.’ ” The court defined intent to mean: "to have a conscious objective to cause a result or engage in the conduct or act with which the defendant is charged.” Defendant took exception to the instruction.
While the jury was deliberating, it reported to the court that it had reached a verdict solely with respect to the first count. The court, on the record but not to the jury, indicated that there was insufficient evidence of a conspiracy to render admissible the objected-to taped statement and, as a result, it *175 would set aside any guilty verdict rendered on the second count of the indictment. It nevertheless urged the jury to continue deliberations and was persuaded by the prosecutor to further reserve on the objection until the jury reached a verdict on the second count. The jury then returned a guilty verdict on count two. Defendant’s objection was then overruled and the motion to set aside the verdict was denied.
The Appellate Division affirmed the judgment of conviction (178 AD2d 247). Without commenting on the trial court’s charge to the jury, the Appellate Division concluded that "the evidence permitted the conclusion that defendant’s conscious objective was to influence the conduct of the officials with money, which on both occasions was delivered” (id.). The Appellate Division added that the disputed evidence was admissible under the coconspirator exception to the hearsay rule "since the evidence established a prima facie case of conspiracy independent of the statements” (id.).
I.
The crime of bribery in the third degree is committed when a person "confers, or offers or agrees to confer, any benefit upon a public servant upon an agreement or understanding that such public servant’s vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced” (Penal Law § 200.00 [emphasis added]).
The statutory history hints at the significant distinction between "intent” and "agreement or understanding.” Predecessor statutes to Penal Law § 200.00, in effect, required only the intent to influence a public official in the exercise of the official’s powers. In 1965, as part of an extensive revision of the Penal Law, the Legislature removed the intent language and substituted the requirement of an "agreement or understanding.” The legislative history of the 1965 revision of Penal Law § 200.00 indicates that the bribery laws were "analyzed, re-appraised, condensed, regrouped and re-written” (Second Interim Report of NY Temp Commn on Revision of Penal Law and Grim Code [1963 NY Legis Doc No. 8], at 38), but that there was no intent to make "major substantive changes in existing law” (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] art 205, at 371 [1964]). Of the five statutes which were consolidated into Penal Law § 200.00, three used the phrase "with intent to influence” (former Penal Law §§ 371, 378, *176 1822). Two others, former Penal Law §§ 465 and 1233, did not use the words "with intent to influence,” but kept the focus on the mental state of the bribe maker. In regrouping and rewriting these statutes as revised Penal Law § 200.00, the Legislature introduced the new core ingredient "upon an agreement or understanding.” While this language continued the focus on the mental state of the bribe maker, it signaled a new and different notion. The key element was changed on its face to something qualitatively and quantitatively higher than the long-standing, simple "intent to influence”. Whether it qualifies as a "major substantive change” (Commn Staff Notes, reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] art 205, at 371 [1964] [emphasis added]) is not the point. It is a substantive change. The dissent would ignore the change entirely, would extirpate from the statute the very words that we have said constitute the "gist of the crime” (People v Harper, 75 NY2d 313, 317, supra) and would rewrite its own preferred word, intent, into the statute as a synonym — which it is not — for the words the Legislature adopted.
Within that framework, we agree with the observation of the trial court that the statute disjunctively requires either a mutual "agreement” between the bribe maker and the public servant, or at least a unilateral "understanding” in the mind of the bribe maker that the bribe will influence the public servant’s conduct. The trial court ran into difficulty, however, when it then equated "agreement or understanding” with "intent” and, in effect, defined "unilateral understanding” as the functional equivalent of and no more than the traditional standby, intent. The three words are not synonymous. Under ordinary statutory construction, they cannot mean the same thing and must be given their nuanced intended effects. Under long-standing statutory interpretation rubrics, we may not ignore the Legislature’s switch in the nucleic words of this statute. Nor can we, by interpretation, strip a critical new word of its plain and intended meaning, rendering it useless or superfluous (see, Matter of Alonzo M. v New York City Dept, of Probation, 72 NY2d 662, 665-666; McKinney’s Cons Laws of NY, Book 1, Statutes § 231; see also, People v Dethloff, 283 NY 309, 315).
Having misconstrued the specific culpable mental state requirement for this defined crime, the trial court then failed to properly rule on the sufficiency of the People’s evidence. We conclude that the prosecution, to satisfy this indispensable *177 element of the statutory prescription, had to prove at least an "understanding” — the Legislature’s word, not ours — in the mind of the bribe maker that the bribe receiver would effectuate the proscribed corruption of public process and was affected to do so by the actus reus of this particular crime. The prosecution utterly failed to satisfy that essential burden in this case.
While we have not previously construed the particular phrase in Penal Law §200.00, we have spoken to identical language in another section dealing with bribe receiving by a witness (Penal Law § 215.05). In People v Harper (75 NY2d 313, supra), because an agreement to "drop charges” against an assailant in exchange for money evinced nothing about the promisor’s intention to appear and testify truthfully in the event that the prosecutor decided to press the charge, we held that a statutory agreement or understanding was not proven. This Court pointedly said that "[t]he gist of the crime is not the payment of money, but rather the 'agreement or understanding’ under which a witness accepts or agrees to accept a benefit” (id., at 317, citing People v Arcadi, 79 AD2d 845, 846, affd on App Div 54 NY2d 981). To be sure, Harper and Arcadi have some differences compared to the instant case, but our analysis and articulation in those cases nevertheless help to buttress our interpretation here, despite the prosecutor’s characterization of the relevant references as mere nonauthoritative dicta.
Pertinently, the recommended pattern criminal jury instruction for Penal Law § 200.00 explains that if a benefit is offered or conferred with only "the hope that the public servant would be influenced thereby, then the crime of bribe giving is not committed” (3 CJI[NY] PL 200.00, at 1379 [Mar. 24, 1989]). That is precisely what happened in this case. Indeed, the trial court acknowledged that an "understanding” could be unilateral, but then diluted the force and meaning of the word by explaining that nothing more was necessary than the defendant’s hope that the benefit bestowed would induce a forbidden favor. A mere "hope” and a statutory "understanding”, in common parlance and in criminal jurisprudence, are miles apart.
We do not need to speculate on what the Legislature intended, for we are confronted with the best evidence of its intention in its new core words "agreement or understanding”. "[C]itizens are [not] free to offer cash to public officials” *178 (dissenting opn, at 181) nor is this defendant declared "innocent” by our determination (dissenting opn, at 182). Ironically, the crime of attempted bribery, for example, either as a separate charge or lesser included count, may be proved when a prosecutor satisfies its burden of proof by a showing of only intent (see, Penal Law § 110.00). When a court concludes that the People have failed to satisfy their burden, "innocence” flows from our firmly and long-respected presumption of innocence until proven guilty.
We thus resolve the open statutory interpretation question by defining the disjunctive word "understanding” as at least a unilateral perception or belief by a perpetrator that the "public servant’s vote, opinion, judgment, action, decision or exercise of discretion as a public servant will thereby be influenced” (Penal Law § 200.00). This does not at all, as the dissent misconstrues it, "hinge” on some "mens rea of the bribe-receiver” (dissenting opn, at 181).
Our interpretation of the statute requires that we next address defendant’s argument concerning his motion attacking the sufficiency of the proof adduced on the first bribery charge. When the trial court ruled in this regard, it not only diminished the correct level of the statutory phrase, it also overlooked the absence of any evidence whatsoever of an "understanding,” as we now definitively construe it, by this defendant on which the jury could return a guilty verdict. We have not injected a "novel” culpable mental state in this statute. The Legislature, as is its role, did that. In construing the Legislature’s word, we in our judicial role can say that the element of understanding can be satisfied unilaterally, but we cannot say as the dissent would that it can be something less than an understanding.
True, these cases are usually circumstantial and inferential; the underlying crimes are, after all, often perpetrated subtly with winks, nods and walks in the park. However, those difficulties cannot justify a deviation from the rigorous rules, especially for proof of all elements of a crime beyond a reasonable doubt. Here, there is no evidence from which any "understanding,” as required by the statute, can be attributed to the defendant. That is a classic failure of proof on insufficiency grounds requiring a quite ordinary and traditional dismissal of the criminal charge. Thus, the first bribery count should have been dismissed.
*179 II.
The second count presents a distinct issue: whether the People presented a prima facie case of conspiracy as the sine qua non to the admission of recorded hearsay statements by an alleged coconspirator. The elementary governing principles are well known. A declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule (People v Rastelli, 37 NY2d 240, 244, cert denied 423 US 995). However, this evidence may be admitted only upon a showing that a prima facie case of conspiracy has been established (People v Salko, 47 NY2d 230, 237, rearg denied 47 NY2d 1010; People v Rastelli, supra). "Of course, the determination whether a prima facie case of conspiracy has been established must be made without recourse to the declarations sought to be introduced” (People v Salko, supra, at 238; see also, Richardson, Evidence § 244 [Prince 10th ed]).
The People’s evidence on the second count established that defendant Tran and his alleged coconspirator Chu were both hotel employees, that defendant urged an undercover investigator to return to one of the hotels on the day in question, and that Chu gave $100 to the investigator when he returned. The People argue that Chu’s recorded statement that the purpose of the payment was to "clear up * * * something here, about Local Law 16” is an admissible non-hearsay verbal act under People v Salko (47 NY2d 230, supra). Salko would allow the admission of statements which are not offered for the truth of the matter asserted, but merely to give "legal effect to the conduct which they accompany” (id., at 239). Although Chu’s verbal act is admissible, it does not resolve the problem of this case. That evidence, not admitted for its truth, at best served to establish only that Chu paid the investigator $100 to influence his handling of the hotel’s alleged Local Laws, 1984, No. 16 violations. It does not and cannot be used to supply the prima facie foundation or connection to defendant as part of a conspiracy. Moreover, to allow the verbal act exception from Salko to be bootstrapped in this fashion in the circumstances of this case would stamp down the rule itself.
This case is very different from Salko (47 NY2d 230, supra), where the defendant made admissible statements both to the police officer receiving the bribe and to the investigating District Attorney linking defendant with the witness coconspi *180 rotor. Those statements by themselves were prima facie proof of the predicate conspiracy, which rendered admissible a coconspirator’s hearsay statements. There is not only nothing like that here, there is nothing here. Where circumstantial evidence is weakly held together by "subjective inferential links based on probabilities of low grade or insufficient degree” (People v Cleague, 22 NY2d 363, 367), a prima facie case will not be deemed satisfied. Since a prima facie case of a conspiracy was never made out, the recorded hearsay statements of Chu referring to defendant in any respect never should have been allowed into evidence. Having been admitted conditionally on a reserved objection, the trial court should have stuck to its original assessment and ultimately sustained the objection and set aside the flawed verdict. Lacking any prima facie linchpin tying defendant to Chu, count two fails for insufficiency of proof.
Accordingly, the order of the Appellate Division should be reversed and both counts of the indictment dismissed.