■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

KEITH CABEY, Appellant. [605 NYS2d 297] —Judgment of the Supreme Court, Bronx County (Bonnie Wittner, J.), rendered May 21, 1992, convicting defendant, after a jury trial, of attempted murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him, respectively, to concurrent prison terms of 9 to 18 years and 3½ to 7 years, modified on the law, the conviction for attempted murder reversed, the sentence imposed thereon vacated and the corresponding count of the indictment dismissed, and the matter remanded for resentencing as to the gun possession conviction, and except as so modified, affirmed.

The evidence against the defendant viewed in the light most favorable to the People (see, People v Contes, 60 NY2d 620), establishes the following: Shortly after 10:00 P.M. on the night of July 23rd, 1990, Shanequa Fanning unexpectedly encountered her ex-boyfriend, Dwayne Henry,* outside of her building. Henry asked her to accompany him to meet a mutual friend, defendant Keith Cabey. Ms. Fanning agreed, and the two walked to a nearby building where they met defendant at the apartment of his cousin, Michael Parsons. Defendant produced keys to the apartment, unlocked the door, and the three went inside. Henry and Ms. Fanning, proceeded into a bedroom toward the back of the apartment while defendant remained in the living room watching television. A fight ensued between Henry and Ms. Fanning over "why [Ms. Fanning] didn't want to be with [Henry] any more". As the argument escalated, Henry physically assaulted and then raped Ms. Fanning. Defendant took no part in these actions against Ms. Fanning.

At some point during the evening, Henry emerged from the back room, removed a gun from his pocket and asked defendant where he could put it. Defendant indicated that he should place it beneath a chair cushion. At another point, Mr. Henry who had been pacing up and down the apartment's hallway, exclaimed in an angry and agitated tone, "we're going to fuck this bitch up".

At approximately 11:00 P.M. defendant's cousin, Mr. Par-

---

* By reason of his participation in the within incident, Henry was indicted for and eventually pleaded guilty to attempted murder in the second degree, rape in the first degree, assault in the first degree, assault in the third degree, criminal use of a firearm in the first degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree. He was sentenced to a term of 5 to 15 years to run consecutive to a term of imprisonment imposed in a Washington D.C. prosecution.

sons, returned home. Shortly after Parsons' arrival, the defendant showed him where Henry's handgun had been hidden; as the defendant lifted the chair cushion beneath which the weapon had been concealed, he said "look what I got". A while later, defendant told Parsons "we're leaving now, there might be some problems."

As the defendant, Henry and Ms. Fanning exited the apartment, Henry shoved Ms. Fanning towards the stairwell and then continued to shove her down some six flights of stairs with the defendant following not far behind. Once they had reached the tenth floor landing, Henry stopped and demanded that Ms. Fanning kiss him. When she refused, he told her "you kiss me because its going to be the last person you ever kiss." He then took out a handgun and shot Ms. Fanning five times in the stomach.

Immediately after the shooting, Henry and the defendant ran down several flights of stairs. Moments later, however, they returned to the tenth floor landing, whereupon Henry shot Ms. Fanning two more times, both of them in her back. Henry and the defendant fled separately to Washington D.C. where they were eventually apprehended.

To establish the defendant's liability as Henry's accomplice in the commission of attempted second degree murder, the People were obliged to prove that defendant shared Henry's specific intent to cause Ms. Fanning's death and that, possessing the requisite culpability, defendant "solicit[ed], request[ed], command[ed], importune[d], or intentionally aid[ed]" Henry in his attempt upon Ms. Fanning's life (Penal Law §§ 20.00, 125.00).

Plainly, nothing said or done by the defendant on the night of the shooting, either singly or in combination, establishes with any measure of certainty, much less beyond a reasonable doubt, that the defendant shared Henry's murderous intent toward Ms. Fanning. Ms. Fanning herself testified that defendant never threatened her or "laid a finger on [her]" and further testified that she did not hear anything said between the defendant and Henry indicative of an agreement between the two to harm her. Nor does the record even disclose a basis to suppose that the defendant might have had a motive to cause Ms. Fanning's death. To the contrary, Ms. Fanning testified that she had had no "problems" with the defendant and that she had been "friendly" with him up until the time of the shooting.

It is well-established that where, as here, a defendant's

conviction is based entirely on circumstantial evidence, the facts from which the inference of guilt is drawn must be " 'inconsistent with his innocence and must exclude to a moral certainty every other reasonable hypothesis' " *(People v Way,* 59 NY2d 361, 365, quoting *People v Bearden,* 290 NY 478, 480). Here, the evidence is at least equally consistent with Henry's attempted commission of a spontaneous act of homicide in the course of a violent argument with his former girlfriend at the height of which, and just prior to the shooting, she refused to kiss him. As was noted in *People v Monaco* (14 NY2d 43, 46), "where the record shows merely a spontaneous act of homicide by one, the other is not, without a greater showing of a personal design to kill, guilty of murder." The proof thus falling far short of what was required in a case of this nature to establish the defendant's intent to kill, much less any actual participation by him in the attempt on Ms. Fanning's life, the defendant's conviction of attempted murder must be reversed and that count of the indictment dismissed. Henry's act of shooting and attempting to kill Ms. Fanning simply was not, on this record, attributable to the defendant *(supra; People v Hayes,* 117 AD2d 621, *lv denied* 68 NY2d 668).

Finally, there is no merit to defendant's contention that his conviction of criminal possession of a weapon in the third degree must be reversed because the handgun may not have been loaded during the period in which he possessed it. The defendant himself testified that he warned his cousin not to sit on the chair within which the gun had been placed because he was afraid it might go off. Defendant further testified that Henry would not carry an unloaded weapon. Concur—Murphy, P. J., Ross and Rubin, JJ.

Kupferman, J., dissents in a memorandum as follows: I would affirm.

The facts in the majority opinion are established and lead inexorably to the conclusion that the defendant was a party to attempted murder in the second degree.

For the conclusion reached by the majority one would have to assume that the defendant, instead of aiding and abetting in the commission of the crime, was merely a voyeur or an innocent bystander caught up in an unlikely series of coincidences.

The defendant provided access to his cousin's apartment, where the events occurred, for his friend Henry. He was seemingly oblivious to the beating and the rape. He heard the threats; suggested the hiding place for the weapon; told his

cousin as he was leaving the apartment that there might be "problems" with the complainant; led Henry and the complainant to the stairwell when the elevator would be the preferred means of egress; shadowed Henry and the complainant as Henry methodically shoved the complainant down six flights of stairs; fled with Henry after the first shooting only to return with him for the delivery of two more shots; fled with Henry, separated and then met him in Washington, D.C. where they were in touch until arrested.

What more is necessary for a jury to conclude, as it did, that the defendant was as guilty as Henry who pleaded guilty to the crimes charged?