■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENEDETTO SCHEPIS, Appellant. [614 NYS2d 719] —Judgment, Supreme Court, New York County (Joan B. Carey, J.), rendered July 31, 1992, convicting defendant, after a jury trial, of bribe receiving by a labor official, bribing a labor official, and participating in a specific prohibited financial transaction, for which he was sentenced to concurrent terms of one year imprisonment, unanimously reversed, on the law, the convictions vacated and those counts of the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30 day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

Defendant, the business manager of Local 17 of the United Brotherhood of Carpenters and Joiners of America, was jointly charged with one Louis Moscatiello, an official of the Tapers and Plasterers Union, with a series of alleged corrupt transactions involving bribery and extortion between certain building trades contractors and certain union officials. The indictment grouped together three broad bribery schemes. Most counts charged Moscatiello alone while others charged both Moscatiello and defendant, although they were not charged with acting in concert.

After severing his case from Moscatiello's, who subsequently

negotiated a guilty plea and did not testify at trial, defendant was tried on nine counts which concerned allegations that defendant had passed bribes to one Melvin Eckhaus, the business agent of Local 135 of the carpenters union turned government informant, on three different dates in 1988: January 13th, July 14th and September 14th. Defendant was acquitted of all charges relating to the first and last dates, when Eckhaus was not "wired", but convicted on the three counts specified above, relating to the July 14th transaction when he was.

The trial evidence consisted primarily of circumstantial evidence as derived and interpreted from Eckhaus' testimony and several tape recorded conversations between Eckhaus and Moscatiello and Eckhaus and defendant and, as in all cases where a conviction is based upon circumstantial evidence, "the facts from which the inference of guilt is drawn must be ' "inconsistent with [the defendant's] innocence and must exclude to a moral certainty every other reasonable hypothesis" ' " *(People v Cabey,* 199 AD2d 197, 200, *lv granted* 82 NY2d 933).

Viewed in the light most favorable to them, the People established that, in a recorded conversation, Moscatiello and Eckhaus discussed Antonio Rodriguez, a principal of Inner City Drywall, a contractor, who had been complaining to Moscatiello that he had problems with Eckhaus. Moscatiello told Eckhaus that he would meet Rodriguez the next evening and try to "nail down" a "package" with him whereby Rodriguez would pay $50,000 in return for labor peace on four jobs. Moscatiello also told Eckhaus that he was no longer "carrying nothing" (interpreted to mean bribe money between parties) and told Eckhaus to "See Benny" the next night at a union meeting.

The next evening, during the union meeting, defendant and Eckhaus went into the men's room and defendant gave Eckhaus an envelope containing $3,000. No words were exchanged, but a note inside stated "A/C" which Eckhaus testified meant "on account". Fingerprints were recovered from the envelope, including one of Moscatiello's, but none of defendant's, who denied giving Eckhaus anything. Eckhaus gave a prearranged signal to his "listeners" that he had received a bribe by saying "thank you" and, after leaving the bathroom, by whispering into his transmitter "something, something, something".

With regard to the first count for which he was convicted, the indictment charged that Moscatiello and defendant, on

July 14, 1988, "with intent to influence [Eckhaus], an official of Local 135 * * * in respect to [his] acts, decisions, and duties as a labor official, conferred, offered, and *agreed* to confer a benefit of three thousand dollars upon [Eckhaus] on behalf of Antonio 'Tony' Rodriguez, a principal of Inner City Drywall Corp." (Emphasis supplied.)

However, the evidence, as it relates to defendant, does not show his participation in any such agreement, or any intent on his part to influence Eckhaus, nor even that the $3,000 came from Rodriguez who also did not testify at trial. The evidence that Eckhaus acted against the interests of the union is established more by innuendo—he would enforce union rules in a more Draconian manner unless he was paid off— than by proving much of the opposite—that he would suspend union rules. In fact, the tenor of several of these conversations (which, again, did not involve defendant, except for a single reference to defendant's giving Rodriguez a hard time) was that union personnel were being hired, and that when shop stewards were removed, it was in the context that they were loafers who, by virtue of their loafing, cost the contractors money.

The indictment also charged them with bribe receiving by a labor official in violation of Penal Law § 180.25 in that on the same date defendant and Moscatiello "solicited, accepted, and agreed to accept a benefit of at least three thousand dollars from Rodriguez * * * on behalf of [Eckhaus] * * * upon an agreement and understanding that this benefit would influence [Eckhaus] in respect to his acts, decisions, and duties as a labor official". Again, there is no significant evidence that Rodriguez was the source of the $3,000, or that defendant solicited, accepted or agreed to accept the money from Rodriguez in order to influence Eckhaus. Moreover, as held by the Court of Appeals in *People v Tran* (80 NY2d 170, 176), a case dealing with bribery of a public official but equally applicable here, the statutory phrase " 'agreement or understanding' " means more than " 'intent to influence' " and requires either a mutual " 'agreement' " between the bribe maker and the bribe receiver (in this case a union official) or at least a unilateral " 'understanding' " in the mind of the bribe maker that the bribe will influence the bribe receiver's conduct. Such evidence is lacking here.

Finally, defendant and Moscatiello were charged with wilfully and knowingly engaging in a specific prohibited financial interest and transaction in violation of Labor Law § 723 (1) (e);

§§ 724 and 725 (4) in that, on the same date, they "wilfully and knowingly participated in and induced conduct which violated the fiduciary obligations of an officer and agent of a labor organization by participating in and inducing the receipt of a payment of three thousand dollars from * * * Rodriguez * * * to [Eckhaus]". This count, invoking the same factual allegations, suffers from the same evidentiary difficulties as the prior counts. In addition, this theory charges a mental state of "knowing and willful." The evidence is equally compelling that defendant was an unknowing conduit—at least unknowing as to these particular factual allegations—when he delivered the envelope. There is nothing in the evidence which supports the conclusion, beyond a reasonable doubt, that defendant knew the source of the funds, or why they were being passed along or, in fact, that he knew that the envelope contained money (though defendant's evasive conduct may have circumstantially proved this much knowledge), or how much.

As we said in *People v Acosta* (174 AD2d 181, 186, *lv denied* 79 NY2d 1045), "the inference of guilty knowledge from the fact of possession [must] be so sure as to constitute proof beyond a reasonable doubt". There, defendant was acquitted because there was no evidence to establish that he knowingly possessed or took part in the sale of cocaine which he delivered. There, drug dealers would employ livery cab drivers, such as defendant, because they would act as unsuspecting couriers, or " 'blind mules' " *(supra,* at 183, 185). In the present case, nothing in the evidence supports the jury's conclusion, beyond a reasonable doubt, that defendant knew the source of the money, why it was being passed along, or even that the envelope contained money. The evidence, as it relates to defendant, does not show his participation in any agreement between Eckhaus and Rodriguez, nor that the $3,000 came from Rodriguez. Thus, the evidence was equally compelling that defendant was acting as an unsuspecting courier and thus did not possess the requisite mens rea.

This is a perfect example of the usually circumstantial and inferential type of bribery cases described in *People v Tran (supra,* at 178), where "the underlying crimes are, after all, often perpetrated subtly with winks, nods and walks in the park. However, those difficulties cannot justify a deviation from the rigorous rules, especially for proof of all elements of a crime beyond a reasonable doubt." Here, as in *Tran,* there is no evidence from which any "understanding" or knowledge as required by the applicable statutes, can be attributed to

defendant and such failure of proof requires dismissal of the charges on insufficiency grounds.

In light of the foregoing determination, we do not reach the other issues raised on appeal. Concur—Rosenberger, J. P., Ellerin, Kupferman, Nardelli and Williams, JJ.