15-536
*United States v. Tagliaferri*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of May, two thousand sixteen.

PRESENT:  PIERRE N. LEVAL,
          ROSEMARY S. POOLER,
          RICHARD C. WESLEY,
                    *Circuit Judges.*

———————————————

UNITED STATES OF AMERICA,

                    *Appellee,*

        -v.-                                    15-536

JAMES TAGLIAFERRI, aka Sealed
Defendant 1,

                    *Defendant-Appellant.*

———————————————

FOR APPELLANT:    MATTHEW W. BRISSENDEN, Matthew W. Brissenden,
                  P.C., Garden City, NY.

1

FOR APPELLEE:	JASON H. COWLEY, Assistant United States Attorney (Sarah Eddy McCallum, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Abrams, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the District Court is **AFFIRMED**.

Defendant-Appellant James Tagliaferri appeals from a judgment of conviction on one count of investment adviser fraud, one count of securities fraud, four counts of wire fraud, and six counts of offenses in violation of the Travel Act, 18 U.S.C. § 1952.[1]  On appeal, Tagliaferri raises a number of challenges to the sufficiency of the evidence and certain jury instructions.  We assume the parties' familiarity with the facts and the record below, which we reference only as necessary to explain our decision.  In an opinion *per curiam* filed herewith, we reject Tagliaferri's argument that the jury instructions related to his

---

[1] The jury was unable to reach a verdict on two additional counts charging wire fraud and a Travel Act violation, and these counts were dismissed on motion of the Government.

investment adviser fraud conviction were in error. We address the remainder of his arguments here and conclude that none constitute reversible error.

## I. Travel Act Convictions

Tagliaferri raises two sufficiency challenges to his six Travel Act convictions: (1) the evidence failed to demonstrate a "corrupt agreement" between Tagliaferri and those who paid him the kickbacks, and (2) the evidence failed to demonstrate the offenses fell within the jurisdictional reach of New York courts. Before we address the merits, we agree with the Government that these two challenges were forfeited below. The rule of our Circuit is that a Rule 29 motion that identifies specific grounds for a judgment of acquittal forfeits grounds not raised in that motion. *See United States v. Delano*, 55 F.3d 720, 726 (2d Cir. 1995); *United States v. Rivera*, 388 F.2d 545, 548 (2d Cir. 1968). Because Tagliaferri admits he did not raise these specific grounds in his Rule 29 motion, they are unpreserved, and we review for plain error. *See Delano*, 55 F.3d at 726.

### a. Corrupt Agreement

Tagliaferri argues that to violate New York's commercial bribe receiving statute—the predicate state offense to his Travel Act violations—New York law requires evidence of a corrupt agreement, citing our decision in *Blue Tree Hotels*

3

*Investment (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004). There, addressing New York's commercial bribery statutes in the context of the Robinson-Patman Act, we concluded that "one cannot be guilty of receiving a commercial bribe unless someone else is guilty of paying it." *Id.* at 222. In response, the Government describes *Blue Tree*'s language as dicta and urges us to apply the New York Court of Appeals' decision in *People v. Bac Tran*, 80 N.Y.2d 170 (1992), in which it concluded that the language "agreement or understanding" in New York's statute criminalizing the payment of bribes to a public official—language that is identical to the commercial bribe receiving statute—permitted conviction on the basis of the payor's unilateral understanding that the public official would be influenced by the payment, *id.* at 178.

The interaction between *Blue Tree* and *Bac Tran*—as well as our decision in *United States v. Geibel*, 369 F.3d 682 (2d Cir. 2004) (addressing commercial bribe paying), and the Court of Appeals' decision in *People v. Alvino*, 71 N.Y.2d 233 (1987) (holding that bribe receiving by a public official requires evidence of a corrupt agreement)—leads us to conclude that any possible error was certainly not plain and did not affect Tagliaferri's substantial rights. *See United States v.*

4

*Olano*, 507 U.S. 725, 732, 734 (1993) ("There must be an 'error' that is 'plain' and that 'affect[s] substantial rights.' . . . 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'" (first alteration in original)); *see also Puckett v. United States*, 556 U.S. 129, 135 (2009) ("[T]he legal error must be clear or obvious, rather than subject to reasonable dispute."); *United States v. Weintraub*, 273 F.3d 139, 152 (2d Cir. 2001) ("For an error to be plain, it must, at a minimum, be clear under current law." (internal quotation marks omitted)). Because the New York Court of Appeals has not spoken directly to *commercial* bribe receiving—and *Bac Tran*'s interpretation of the statutory language post-dated *Alvino*—it is not clear whether *Alvino*'s "corrupt agreement" requirement or *Bac Tran*'s "unilateral understanding" interpretation should guide. While *Blue Tree* and *Geibel* post-date *Alvino* and *Bac Tran*, we did not address the argument raised here by Tagliaferri. Thus, our explanation of the structure and meaning of the New York commercial bribery statutes cannot be considered dispositive. Accordingly, the application of New York's commercial bribe receiving statute to Tagliaferri's conduct is, at minimum, "subject to reasonable dispute," and thus we lack discretion to disturb Tagliaferri's conviction. *Puckett*, 556 U.S. at 135.

5

### b. Jurisdiction

Tagliaferri next argues that the conduct underlying his Travel Act convictions falls outside of the reach of the geographical jurisdiction of New York courts, *see* N.Y. Crim. Proc. Law §§ 20.20, 20.30, and accordingly, his convictions cannot be sustained. This argument is without merit. In requiring a predicate state offense, the Travel Act incorporates the "substantive offense" but not "the rules of evidence and procedure that are in force in the State where the crime was committed." *United States v. Corallo*, 413 F.2d 1306, 1323 (2d Cir. 1969). We have never held that a state court's jurisdictional limitations are substantive. Such requirements are far more analogous to procedural limitations than to the conduct elements that we import into the federal racketeering statutes. *See United States v. Diaz*, 176 F.3d 52, 100 (2d Cir. 1999) ("[R]eferences to state law in [racketeering] statutes merely serve a definitional purpose, that is, to identify generally the kind of conduct made illegal by the federal statute."); *United States v. Friedman*, 584 F.2d 535, 565–66 (2d Cir. 1988) (holding that New York's double jeopardy rules "do not affect the generic definition of the crime of bribery" and were merely "procedural rules governing prosecutions for all crimes in New York" and thus "irrelevant under RICO").

A federal court's geographical reach over criminal offenses is governed by the Constitution and the Federal Rules of Criminal Procedure. *See United States v. Saavedra*, 223 F.3d 85, 88 (2d Cir. 2000) (citing U.S. Const. art. III, § 2, cl. 3; Fed. R. Crim. P. 18). Tagliaferri has raised no argument that his prosecution in the Southern District of New York failed to satisfy these provisions. In the absence of precedent suggesting that *state* jurisdictional limitations are substantive rather than procedural, we cannot say that the District Court's failure to vacate, *sua sponte*, the Travel Act convictions constituted a "clear" or "obvious" error under governing law. *See Olano*, 507 U.S. at 734. Accordingly, we lack discretion to disturb Tagliaferri's convictions.

## II. Securities Fraud Conviction

Tagliaferri argues that the District Court erred in instructing the jury that they were not required to find that Tagliaferri intended to harm his clients in order to convict him under section 10(b) of the Securities Exchange Act and Rule 10b-5 of the United States Securities and Exchange Commission. We have recently rejected this argument, *see United States v. Litvak*, 808 F.3d 160, 178–79 (2d Cir. 2015), and accordingly, there was no error in the District Court's charge.

### III.    Wire Fraud Convictions

#### a.  Right to Control Instruction

Tagliaferri contends that the District Court erred by instructing the jury they could find intent to harm on a theory that Tagliaferri provide false or fraudulent information that deprived them of the "right to control" their money. Tagliaferri admits this argument was not raised below and contends it should be reviewed for plain error. The Government responds that the argument was not forfeited but waived and thus cannot be reviewed at all on appeal. We agree.

In contrast to forfeiture, which arises "in most instances due to mistake or oversight," "waiver can result only from a defendant's intentional decision not to assert a right." *United States v. Spruill*, 808 F.3d 585, 596–97 (2d Cir. 2015). If the defendant waives, rather than forfeits, a claim of error, the ground is "extinguish[ed]" and completely unreviewable on appeal. *Olano*, 507 U.S. at 733; *accord United States v. Kon Yu-Leung*, 51 F.3d 1116, 1121 (2d Cir. 1995). We have distinguished between "acquiescence in the judge's ruling" and "approval or invitation of it," with only the latter category constituting waiver. *United States v. Crowley*, 318 F.3d 401, 414 (2d Cir. 2003).

We conclude that Tagliaferri waived his challenge to the instruction. During the charging conference, Tagliaferri's counsel responded affirmatively when the judge asked him whether fraud could exist "if the person is deprived of the right to make decisions about how they use their assets." J.A. 109. Subsequently, after the District Court invited the parties to write letters proposing jury instructions on this point, the Government suggested the language ultimately adopted, and Tagliaferri's counsel both "join[ed] the Government's proposal as to the 'right to control' instruction" and reiterated his agreement in open court the same day. J.A. 126. In cases such as this one, where the parties have conferred and affirmatively agreed to the District Court's decision now challenged on appeal, we have concluded that the agreement constitutes a true waiver. *See Spruill*, 808 F.3d at 596–99; *United States v. Binday*, 804 F.3d 558, 582–83 (2d Cir. 2015). Accordingly, Tagliaferri's claim of error has been extinguished and cannot be heard on appeal. *See Olano*, 507 U.S. at 733.

### b. Financial Loss

Tagliaferri argues on appeal, as he did below, that the District Court erred in not instructing the jury that the wire fraud convictions required the jury to find that Tagliaferri contemplated "an actual financial loss to the client."

9

However, our precedents do not require contemplation of actual financial loss in wire fraud—instead, we have sustained convictions where victims were deprived "of potentially valuable economic information," such as where the deceit "affected the victim's economic calculus" or "exposed the [victim] to unexpected economic risk." *Binday*, 804 F.3d at 570–71 (internal quotation marks omitted). As we recently explained, "it is not necessary that a defendant intend that his misrepresentation actually inflict a financial loss—it suffices that a defendant intend that his misrepresentations induce a counterparty to enter a transaction without the relevant facts necessary to make an informed economic decision." *Id.* at 579; *see also id.* at 578 (noting that fraudulent intent may be affirmed where "misrepresentations foreseeably concealed economic risk or deprived the victim of the ability to make an informed economic decision"). The information Tagliaferri concealed from his clients—the existence of kickbacks and cross-trading, as well as the investment that Tagliaferri attempted to characterize as a loan through the creation of fictitious notes—is unquestionably "valuable economic information" that would "affect[] the victim's economic calculus." *Id.* at 570 (internal quotation marks omitted). The District Court did not err in instructing the jury that Tagliaferri did not need to contemplate an

actual financial loss in order to intend to deprive his clients of the right to control their assets.

### c. **Final Challenges**

Tagliaferri makes two final challenges to the Government's right to control theory: that it was (1) unconstitutionally vague and (2) a constructive amendment of the indictment.

First, the District Court instructed the jury that concealing information alone was insufficient; instead, the jury had to find that Tagliaferri intended to deprive his clients of their right to control their money or property through "false or fraudulent information that is of some independent value and that affects his ability to make discretionary economic decisions about what to do with that money or property." J.A. 309. There is nothing in the instruction that "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (internal quotation marks omitted). More importantly, Tagliaferri's conduct here— involving kickbacks, cross-trading, and creation of fictitious sub-notes—is the kind of conduct "clearly proscribed" by the wire fraud statute; accordingly,

11

Tagliaferri "cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 19 (internal quotation marks omitted).

Second, the indictment here charged Tagliaferri with a scheme to defraud his clients by depriving them of money or property through kickbacks, cross-trading, and fictitious sub-notes. J.A. 61–63. Nothing about advancing a right to control theory of deprivation "so modif[ied] essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *Binday*, 804 F.3d at 584 (internal quotation marks omitted). Tagliaferri was "given notice of the core of criminality to be proven at trial," *United States v. Agrawal*, 726 F.3d 235, 260 (2d Cir. 2013) (emphasis and internal quotation marks omitted), and consequently, the indictment was not constructively amended.

## IV. Conclusion

We have considered Tagliaferri's remaining arguments and find them to be without merit. For the reasons stated above, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

12