■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NESTOR ELIAS, Appellant.—Judgment, Supreme Court, New York County (Harold Rothwax, J.), rendered October 28, 1987, which convicted defendant, after jury trial, of conspiracy in the second degree and assault in the first degree and sentenced him to concurrent prison terms of 8⅓ to 25 years and 5 to 15 years, respectively, unanimously affirmed.

Complainant LaQuine Simmons lived in an apartment building on West 48th Street in Manhattan. The defendant was a drug dealer who lived in the building in an apartment next door to Simmons. Other drug dealers resided in other apartments in the building, and defendant and the other dealers often sold drugs on the street in front of the premises. Beginning in January 1986, Simmons organized other law-abiding tenants of the building in an attempt to rid the building of drug dealers with the aid of the police, by attempting to evict them, and other measures.

Throughout the summer of 1986 there were many incidents involving hostile confrontations between Simmons and the defendant. On one occasion, in August, defendant threatened Simmons with a knife. In response, Simmons reported the incident to the police, who arrested the defendant for menacing, and she also obtained an order of protection.

On three separate occasions defendant offered a fellow drug dealer, Carlos Turriago, $5,000 to kill Simmons and mentioned

that he obtained a .25 calibre pistol for that purpose. Turriago refused these offers and testified against the defendant at trial. Defendant's roommate and homosexual companion, Junior Ortiz, made a similar offer to another drug dealer, Ramon Mateo, who also declined, and testifed at the trial. Eventually, on September 20, 1986, Junior Ortiz confronted Simmons in the building's stairway and shot her five times. Simmons testified that just before she entered the building prior to being shot, she observed defendant and Ortiz together watching her from their window.

In the early morning hours after the shooting, at approximately 2:00 or 3:00 A.M., Ortiz knocked on the door of a neighbor, one Santiago, and asked if he had seen defendant. Santiago told him "no" and then he heard Ortiz knock on the door of defendant's apartment and state, "If you don't want to open the door, I know you're there, you don't want to open the door, I want my fucking money." Ortiz then left the building, and as he came downstairs said to Santiago "You haven't seen me."

The next day outside the building, Ortiz told Turriago that he was looking for defendant because defendant owed him $5,000. Ortiz then began shouting in the direction of the window of defendant's apartment that he would kill defendant if he did not get his money.

On this appeal, defendant claims that it was improper to admit into evidence the hearsay statements made by Ortiz. However, testimony concerning the declarations of one conspirator, spoken during the course of and in furtherance of a conspiracy, is admissible against coconspirators, as an exception to the hearsay rule. (E.g., People v Ardito, 86 AD2d 144, 147, affd 58 NY2d 842; People v Rastelli, 37 NY2d 240.) Before admitting into evidence the coconspirator's declarations, the People must make out a prima facie case of conspiracy, and the determination whether a prima facie case of conspiracy has been established must be made without recourse to the declarations sought to be introduced (People v Salko, 47 NY2d 230).

Here, the independent evidence established a prima facie case of conspiracy in the first instance. Defendant had a clear motive to harm Simmons and made it clear that he wanted her killed. He told two other witnesses that he would murder Simmons or have someone else do it. On several occasions defendant offered Turriago $5,000 to kill Simmons, and later, Ortiz offered Mateo the same amount of money to shoot someone, the reasonable inference being that Ortiz was acting

on defendant's behalf. Furthermore, Ortiz was defendant's close associate, fellow drug dealer and homosexual companion. Ultimately, after Ortiz and the defendant jointly watched her enter the building, the complainant was shot by Ortiz himself with a .25 calibre pistol, the same type of weapon that defendant told Turriago he had acquired to shoot Simmons. Accordingly, once the prima facie case of conspiracy was made out in this way, the admission into evidence of the coconspirator's hearsay statements was proper.

Defendant also contends that the trial court erroneously permitted the jurors to take notes during the supplemental charge. During its deliberations, the jury sent the court a note asking to hear again the charges regarding conspiracy and circumstantial evidence, and inquired if notes could be taken. Before answering the note, the Trial Judge said: "In this situation I have no problem with you taking notes. I told you at the outset of the case I didn't want you to take notes while testimony was coming in. But I have no problem with you taking notes as I speak to you." Defendant did not object. The court then gave the substantive supplemental instructions requested and the jury resumed deliberations. There was no further reference to note taking and there is no evidence in the record that any juror actually took notes. In the absence of any showing that any notes were in fact taken, it is unnecessary to reach this unpreserved issue. Concur—Rosenberger, J. P., Kassal, Ellerin, Smith and Rubin, JJ.