[737 NYS2d 16]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v FRANCISCO CRUZ, Respondent.

First Department, January 22, 2002

### APPEARANCES OF COUNSEL

*Eleanor J. Ostrow* of counsel (*Mark Dwyer* on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for appellant.

*Susanna De La Pava* for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

The People appeal from the dismissal of the indictment on the ground that the only grand jury evidence linking defendant to the charged crimes was the uncorroborated testimony of accomplices. The specific issue presented is whether one of those witnesses, a participant with defendant and others in an earlier unsuccessful robbery at a drug dealer's apartment and part of a larger conspiracy to commit such crimes, but who was not present during the charged robbery, burglary and homicide offenses committed at the same apartment the day after the unsuccessful robbery, was an accomplice within the meaning of CPL 60.22. We hold that because there was no evidence that this grand jury witness participated in any offense based on the facts or conduct underlying the charged crimes of robbery, burglary or murder, he was not an accomplice under CPL 60.22

and his testimony therefore was not subject to the corroboration requirement.

The evidence before the grand jury was supplied primarily by three witnesses, Hector M., one of the victims of the charged robbery and burglary, Juan D., an admitted accomplice in the unsuccessful robbery/burglary as well as the charged crimes, and the witness in question, identified as Mr. V, who participated only in the unsuccessful robbery/burglary. Juan D. and Mr. V testified before the grand jury pursuant to waivers of immunity.[1]

The grand jury evidence established that on the night of February 12, 1997, defendant, Juan D., Mr. V and three others drove to a building on Riverside Drive with the intention of robbing the occupants of the first floor apartment. The plan called for Mr. V to stay in the car, while the others gained entry to the apartment by beeping the occupants and forcing their way inside when one of the occupants came out to answer the beep at a nearby pay telephone.[2] The plan failed, however, when the participants did not reach the building until after Hector M. had already left the apartment. At that point, according to Mr. V's testimony, the group "split up" and everyone went home.

A few hours later, the group, with the exception of Mr. V, returned to Riverside Drive to try again to gain entry to the apartment. This time, after one of the group beeped the occupants, Hector M. opened the door and defendant, Juan D. and two others, all armed with guns, forced Hector M. back into the apartment. The robbers bound Hector M. and Oliver M., another occupant, and searched the apartment. Finding only a small amount of cash, one of the participants grabbed Oliver M. stating, "I'm going to make him talk." Shortly after, a shot rang out and the shooter told the others that he had shot Oliver M. "by mistake." The participants fled.

Mr. V denied any knowledge that a second robbery attempt was planned and further testified that he was taken into custody by the warrant squad on an unrelated case on the morning of February 14, 1997. Shortly after he was released from custody that day, he was beeped by another confederate named Pablito, who had called a meeting to discuss the February 13th homicide. Later that day, Mr. V attended the meeting

---

1.  Hector M. also testified pursuant to a waiver of immunity, presumably in connection with his drug dealing activities.

2.  The participants had previously been informed that there was no telephone in the apartment.

with the other participants, including defendant, who, according to Mr. V, questioned "how David [could have] shot the guy," given that the two victims had been tied up.[3]

The prosecutor instructed the grand jury that Juan D. was an accomplice as a matter of law whose testimony had to be corroborated by non-accomplice testimony tending to connect the defendants to the crime. In that regard, the prosecutor further instructed the grand jurors that they could consider whether Mr. V's testimony concerning defendant's admission during the post-crime meeting corroborated Juan D.'s testimony as to the defendant's participation in the charged crimes. The grand jury returned an indictment against defendant and one of the other participants, charging them with three counts of felony murder, two counts of first-degree robbery and one count of first-degree burglary.

Defendant moved to dismiss on the ground that the indictment was based on the uncorroborated testimony of two accomplices, Juan D. and Mr. V. Specifically, defendant argued that Mr. V was an accomplice as a matter of law because he had participated in the planning and unsuccessful attempt to burglarize the apartment on February 12th, that such attempt was part of a larger conspiracy and that Mr. V, despite his absence from the completed crimes of February 13th, never renounced his participation in the conspiracy, as evidenced by his attendance at the post-crime meeting.

In opposition, the People argued that Mr. V was not an accomplice to the charged crimes under CPL 60.22 because he was not present during the February 13th incident and did nothing to aid in the commission of those crimes, was unaware that the others planned a second attempt and did not learn of the crimes until after their commission. At most, the People argued, Mr. V had joined a conspiracy to commit a robbery and burglary on February 12th.

In further support of the motion to dismiss, defendant offered a police DD-5 report wherein Juan D. told the interviewing investigator that after the failed burglary/robbery attempt on February 12th, "the group planned to do it the next day." According to the same report, Juan D. told the investigator that on February 13th Mr. V didn't show up. Juan D. didn't know why. Defendant argued that Mr. V was not present during the February 13th incident only because he was in police custody.

---

3. Mr. V was the only witness to testify that defendant was present at the meeting. Juan D. testified that defendant was not present.

Defendant also offered the minutes of Mr. V's guilty plea allocution in the United States District Court to the crime of conspiracy to distribute cocaine. During the allocution, Mr. V admitted that from January 1, 1995 to December 17, 1997, "I was a member of a gang that used to do robberies, and dealing with drugs and the kind of stuff like that." He further stated that the robberies occurred in Manhattan and the Bronx and involved stealing drugs from drug dealers' apartments and subsequently distributing the drugs. Defendant argued that in light of Mr. V's admission under oath that he was a member of a particular conspiracy to rob drug dealers, of which the February 13th crimes were a part, Mr. V therefore was an accomplice whose testimony had to be corroborated.

In decisions, both oral and written, the motion court dismissed the indictment with leave to re-present. Based upon Mr. V's admitted participation in the February 12th attempted robbery/burglary, his plea allocution in Federal court to conspiring to rob drug dealers during this time period and the aforementioned DD-5 report, the court concluded that "the robbery/homicide of February 13, 1997 was *not* a single isolated incident, but was part of a *larger conspiracy*, of which Mr. V was an accomplice" (emphasis in original). Accordingly, the court ruled that Mr. V was an accomplice under CPL 60.22 because he "may have been charged with a state crime of conspiracy, with respect to the underlying charge presented to the instant grand jury."

On appeal, the People argue that Mr. V could only be an accomplice under CPL 60.22 if he had personally participated in, and bore some criminal liability for, the conduct for which defendant is on trial. They contend that because he did not personally participate in the conduct constituting the February 13th crimes, nor participate in an offense based upon facts constituting those crimes, Mr. V was not an accomplice under CPL 60.22. We agree.

New York's accomplice corroboration rule provides that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]).[4] As the Court of Appeals has explained, "[t]he law recognizes that accomplice testimony is

---

4. CPL 60.22 is applicable to grand jury proceedings pursuant to CPL 190.30 (1), which states "the provisions of [CPL] article sixty, governing rules of evidence and related matters with respect to criminal proceedings in general, are, where appropriate, applicable to grand jury proceedings."

inherently untrustworthy because those charged with a crime often seek to escape the consequences and curry favor with officials by implicating others (*see, People v Hudson*, 51 NY2d 233, 238; *People v Cona*, 49 NY2d 26, 35-36; *see generally*, 7 Wigmore, Evidence § 2057 [Chadbourn rev 1978])." (*People v Sweet*, 78 NY2d 263, 267.) "Corroboration is required to 'protect the defendant against the risk of a motivated fabrication' by insisting on proof 'other than that alone which originates from a possibly * * * self-interested accomplice.' " (*Id.*, quoting *People v Hudson*, *supra* at 238.)

CPL 60.22 (2) defines an accomplice as "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged." "While the inclusion of paragraph (b) was intended by the Legislature to expand what was envisioned to be an unduly restrictive common-law definition of an accomplice (see *People v Beaudet*, 32 NY2d 371, 378), there remains the requirement that the alleged accomplice be in some manner 'implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial' [citations omitted]." (*People v Dorta*, 46 NY2d 818, 820.)

Upon our review of the statutory language and the case law interpreting it, we are persuaded by the People's argument that the Legislature did not intend to broaden the definition of an accomplice to include witnesses who had not participated at all in the facts or conduct constituting the crimes charged. In reaching this conclusion, we are guided by the Court of Appeals admonition that a "mechanical, literal" interpretation of CPL 60.22 is disfavored. (*See, People v Brooks*, 34 NY2d 475, 477-478 [fence of stolen property not an accomplice to theft even though receipt of stolen property must in a literal sense be considered to be based on some of the same facts as theft]; *see also, People v McAuliffe*, 36 NY2d 820 [accomplice to bribery not an accomplice to defendant's perjury about that bribery]; *People v Sacco*, 199 AD2d 288, 289, *lv denied* 84 NY2d 939 [accessory after the fact not an accomplice for purposes of corroboration requirement of CPL 60.22].)

Although the motion court found that Mr. V's absence from the February 13th incident was not dispositive as to his accomplice status vis-à-vis the crimes committed at that time, case law holds that a witness's participation or nonparticipation in the conduct constituting the charged crimes is generally the

critical factor in determining accomplice status. For instance, in *People v Cobos* (57 NY2d 798), the witness in question had admittedly participated in the robbery/assault of the victim a few hours before the homicide, and had loaned his car to his accomplices so that the victim could be taken to the hospital. Unbeknownst to the witness, however, his accomplices murdered the victim instead. The evidence further showed that the intent to murder the victim was not formed until after the car was borrowed, and, other than removing the victim's bloodstains from the car after the murder, the witness had no other connection to the homicide. The Court concluded that the witness's participation in the earlier robbery/assault did not make him an accomplice to the homicide because "[n]one of the facts or conduct involved in the robbery attempt and assault are also involved in [the murder] charge." (*Id.* at 801.)

Similarly, in *People v Sledge* (136 Misc 2d 705, *affd* 162 AD2d 481, *lv denied* 76 NY2d 865), the alleged accomplice witness was a member of a gang of youths who entered three grocery stores on Halloween and stole eggs, used to throw against the stores, and beer. The group descended upon a fourth store and in the course of an attempt to force their way into the store, the defendant shot the owner. The witness did not participate in the attempt to enter the fourth store, but was waiting outside with several others when the shooting occurred. The court ruled that despite the witness's participation in the first three incidents, and his awareness that the defendant's accomplice at the fourth store was in possession of a firearm, he could not be considered an accomplice to the intentional murder since there was no evidence that he participated in an offense based on any of the facts or conduct constituting the crimes charged (i.e., the shooting of the deceased).[5]

In the instant case, as in *Cobos* and *Sledge*, there was no evidence before the grand jury that Mr. V personally participated in any conduct constituting the charged crimes of burglary, robbery and murder. Rather, the evidence showed that Mr. V was not present during the commission of these offenses, that he denied any knowledge that the group had planned a second attempt to commit the crimes several hours later and that the

---

**5.** Given the absence of evidence concerning the witness's participation in the conduct underlying the felony murder charge, namely, the attempted burglary and larceny of the fourth store, the court also ruled that, at best, the witness's status as an accomplice to the felony murder charge was a question of fact for the jury.

others developed the plan to commit the charged crimes after his participation had ended.[6]

Additionally, neither Mr. V's role in the aborted robbery/burglary nor his presence at the post-crime meeting suffices to constitute participation in conduct constituting the charged offenses. The aborted robbery/burglary constituted separate offenses based on entirely different conduct from the charged crimes and Mr. V's presence at the meeting rendered him, at best, an accessory after the fact, an involvement insufficient to make him an accomplice under CPL 60.22 (see, People v Stanley, 273 AD2d 132, lv denied 96 NY2d 835 [witness who was present at crime scene and disposed of weapon not an accomplice, but rather, at most, an accessory after the fact]; People v Sacco, supra, 199 AD2d 288 [witness who drove victim to scene at defendant's request, walked away from victim and defendant and heard "popping" sound, and helped defendant bury victim an accessory after the fact, not an accomplice]).

Without any evidence before the grand jury that Mr. V participated in conduct on which the charged crimes were based, the motion court relied on material dehors the grand jury record to find that Mr. V participated in a conspiracy based on some of the same facts or conduct constituting the charged crimes. The difficulty with this reasoning is that it ignores the requirement, repeatedly cited by the Court of Appeals, that the accomplice witness be in some way criminally " 'implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial.' " (People v Dorta, supra, 46 NY2d at 820 [citations omitted].)

Even accepting that Mr. V was a member of a larger conspiracy, he was not subject to prosecution for the burglary, robbery and murder offenses committed by the others in the original group. Under New York law, "[t]he crime of conspiracy is an offense separate from the crime that is the object of the conspiracy" and a person's membership in a conspiracy does not make him liable for the substantive crime. (People v McGee, 49 NY2d 48, 57, cert denied sub nom. Waters v New York, 446 US 942.) A coconspirator is liable for the object crimes of the conspiracy only if he or she personally participates in the substantive crime (id. at 57-58).

---

**6.** Defendant's argument that the statements attributed to Juan D. in the DD-5 report that "the group planned to do it the next day" and that Juan D. didn't know why Mr. V didn't show up rebut Mr. V's claim that he was unaware of the group's plan to try the robbery again is unpersuasive. The statements, on their face, do not implicate Mr. V and, at most, raise the inference that Juan D. expected Mr. V to continue his involvement.

*People v Cona* (*supra*, 49 NY2d 26), cited by defendant, does not compel a different result. In *Cona*, several police officers were charged with the crimes of bribe receiving, official misconduct and conspiracy relating to a scheme whereby they accepted payments from gamblers in return for a guarantee that the police would not curtail the gamblers' operations. Two of the defendants were convicted based on the uncorroborated testimony of Officer O'Brien, who initially acted as an undercover police agent in the investigation of the scheme, but who eventually joined the conspiracy as an active member. At issue before the Court of Appeals was the trial court's refusal to charge the jury that O'Brien's testimony concerning events that occurred prior to his conversion was subject to the corroboration requirement. The Court held that in light of O'Brien's admitted participation in an "ongoing criminal enterprise" all of his testimony concerning events both before and after his conversion was subject to CPL 60.22 (*id.* at 35), and the defendants' convictions based on his uncorroborated testimony could not stand.

Significant to the holding in *Cona* was the Court's finding that O'Brien "necessarily participated in '[an] offense based upon the same or some of the same facts or conduct which constitute the offense charged.'" (49 NY2d at 35.) Based on the facts in *Cona*, this finding could only be based on his personal participation in the crimes of bribe receiving and official misconduct after his conversion, or the crime of conspiracy—all crimes charged in the indictment against the defendants. Thus, any conduct by O'Brien in furtherance of the conspiracy, at any time, would necessarily entail involvement in conduct constituting the offense charged because the charge of conspiracy was included in the indictment.

Conversely, in this case, Mr. V did not participate in the underlying crimes charged in the indictment and further could not have participated in any conduct constituting a charged offense of conspiracy since the instant indictment included no such charge. While it is true that a witness need not be charged with any crime to be an accomplice under CPL 60.22 (*People v Berger*, 52 NY2d 214, 219), in the absence of such a charge Mr. V cannot be said to have participated in conduct constituting a charged crime. (*See, People v McAuliffe, supra*, 36 NY2d at 822 [bribe-giver not an accomplice to bribe-receiver's perjury about the bribe since defendant charged only with perjury, not bribery, and bribe-giver's conduct constituted no part of crime of perjury].)

Although in *Cona*, the Court warned against applying the accomplice corroboration requirement in a manner where it would be "possible to avoid the * * * rule in any situation in which an admitted accomplice did not participate in all of the crimes for which the defendants are tried" (*People v Cona, supra*, 49 NY2d at 35), here, as noted, unlike *Cona*, Mr. V did not participate in *any* of the crimes for which defendant was tried. Plainly, the above statement was made in the context of the situation in *Cona*, where the witness, a member of a charged conspiracy that is the subject of the trial, testifies about some criminal acts in furtherance of the conspiracy in which he participated, as well as other acts in which he did not. As that is not the situation here, *Cona* does not control the outcome of this case.

Concededly, Mr. V's membership in a conspiracy encompassing the February 13th robbery/burglary could be viewed as satisfying the literal language of the definition of an accomplice contained in CPL 60.22 in the sense that the February 13th robbery/burglary committed by the others arguably constituted an overt act and, thus, was an element of the conspiracy. Such view, however, eschewed by the Court of Appeals, would be inconsistent with the long line of cases requiring the witness's participation in at least some of the facts or conduct for which the defendant is on trial. (*See, People v Cobos, supra*, 57 NY2d 798; *People v Sledge, supra*, 136 Misc 2d 705.) Only by a strained, "mechanical, literal" reading of the statute (*see, People v Brooks, supra*, 34 NY2d at 477-478) could the statutory requirement that the accomplice witness be subject to prosecution for an offense based on the conduct or factual transaction on trial be met in the case of Mr. V, a non-participant in the acts of the other participants on February 13th.[7]

Nor does *People v Berger* (*supra*, 52 NY2d 214) support defendant's position here. In *Berger*, the defendant was convicted of criminal solicitation of perjury based upon the testimony of the alleged solicitee, Gambino, who, in fact, subsequently perjured herself before the grand jury investigating a fraudulent loan scheme by the defendant. Although the trial court acknowledged that the only evidence of the solicitation was Gambino's testimony, it nonetheless convicted the de-

---

7. Significantly, neither the motion court nor respondent has cited a single decision wherein a witness who did not personally participate in an offense based upon some of the same facts or conduct as the charged crimes was found to have been an accomplice under CPL 60.22 (2) (a).

fendant of soliciting perjury without requiring any corroboration of her testimony.

In affirming the Appellate Division's dismissal of the indictment, the Court of Appeals held that Gambino was an accomplice as a matter of law when she testified at the defendant's trial for criminal solicitation because, upon her agreement to perjure herself and her subsequent perjury before the grand jury, she became potentially liable for prosecution for the crime of conspiracy. (*Id.* at 220.) Significantly, the Court held that although the overt act element of conspiracy was based on conduct different from the criminal solicitation, the agreement element of conspiracy was based upon the same facts as the solicitation, thereby satisfying the definition of an accomplice under CPL 60.22 (*id.*). More to the point, however, was the Court's focus on whether *the witness participated* in either the overt act or the agreement elements of the conspiracy, and the requirement that, before the witness would be deemed an accomplice under CPL 60.22, such participation involve an offense based on some of the same facts or conduct as the charged offense. Here, the motion court's conclusion that Mr. V need not have participated in any of the conduct giving rise to the charged crimes in order to be an accomplice under CPL 60.22 cannot be reconciled with *Berger*.

Additionally, the dangers inherent in accomplice testimony are no greater here than in *Cobos* and *Sledge*, where the witnesses acted as accomplices in the criminal activities leading up to the charged crimes, but did not participate in the crimes themselves. In those cases, the risk that the witnesses' participation in some criminal activity with the defendants might render their testimony inherently untrustworthy was deemed insufficient to accord them accomplice status under CPL 60.22, since the witnesses had not participated in any offense based on the facts or conduct constituting the charged crimes. The same result is required here. "To hold * * * that it should suffice to show only that the particular witness was 'in some way implicated' in defendant's criminal activity would be to stretch the statute far beyond the ambit intended by the Legislature." (*People v McAuliffe, supra*, 36 NY2d at 822.)

Accordingly, the order of the Supreme Court, New York County (Michael Corriero, J.), entered February 4, 2000, dismissing the indictment, should be reversed, on the law, the indictment, reinstated and the matter remanded for further proceedings.

ANDRIAS, J. P., SAXE, WALLACH and MARLOW, JJ., concur.

Order, Supreme Court, New York County, entered February 4, 2000, reversed, on the law, the indictment reinstated and the matter remanded for further proceedings.