■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS CABAN, Appellant. [772 NYS2d 675]—

Judgment, Supreme Court, Bronx County (John Moore, J.), rendered December 22, 1997, convicting defendant, after a jury trial, of conspiracy in the second degree, and sentencing him to a term of 8⅓ to 25 years, affirmed.

Saxe and Gonzalez, JJ., concur in a memorandum by Gonzalez, J., as follows: In this prosecution of defendant for conspiring with others to murder a rival drug dealer, there are two primary issues on appeal. The first is whether the prosecution established a prima facie case of conspiracy by evidence independent of the hearsay declarations of two coconspirators sought to be introduced at trial. The second is whether the trial court's failure to instruct the jury sua sponte that a prosecution witness was an accomplice as a matter of law should be reviewed in the interest of justice, despite defense counsel's explicit request that the witness's accomplice status be submitted to the jury as a factual question.

We conclude that a prima facie case of conspiracy was established by independent evidence, thereby justifying admission of the coconspirators' statements. In addition, although we find defendant's jury charge claim is unpreserved, since the trial record does not provide undisputed evidence that the prosecution witness was an accomplice as a matter of law on the conspiracy charge, no legal basis existed for such an instruction and counsel was not ineffective in failing to request it. Accordingly, the judgment of conviction should be affirmed.

In March 1995, prosecution witness George Castro was a street-level drug dealer working for defendant Carlos Caban's drug business on Fox Street, between 156th Street and

Longwood Avenue, in the Bronx. Angel Ortiz, a rival drug dealer, also sold crack on Fox Street.

At defendant's trial, Castro testified that on March 18, 1995, he was packaging crack for sale at a "stash house" located in apartment 4A at 777 Fox Street. Also present were defendant and his brother, Derrick Garcia, and at least two other drug sellers, Pello Torres and Melvin Butler. According to Castro, defendant announced that Ortiz "needed to be killed" because he was taking business away from him. Defendant offered to pay $5,000 for the murder, to which Garcia responded "I'll do it." Torres then stated that he would provide a gun.

On cross-examination, Castro admitted that one day in mid-March 1995, he, Torres and Butler went to the corner of 156th and Fox Street, planning to kill Ortiz. Butler was armed with two guns and Castro acted as a look-out. However, the plan was aborted when the police arrived on the scene.

On June 1, 1995, at approximately 8:50 P.M., Ortiz was in a playground on Fox Street with his girlfriend's four-year-old daughter and three of his dealers. At about 9:00 P.M., as Castro stood in front of 777 Fox Street, Torres approached him from the direction of 156th Street and said "It's time." Torres then entered 777 Fox Street, and shortly thereafter, Garcia exited the building with another man. Castro followed Garcia and the second man to the playground; Castro stopped across the street in front of 725 Fox Street. From there, Castro observed Garcia walk over to Ortiz and begin arguing with him over defendant's drug "spot." As Ortiz tried to walk away, Garcia shot him multiple times "real close to his back," resulting in Ortiz's death.

On November 8, 1995, Castro was arrested for two drug sales. Realizing that he was "facing a lot of time," he told a homicide detective that he had information about two homicides, including the Ortiz murder. Castro ultimately entered into a cooperation agreement with the Bronx District Attorney's office whereby he was permitted to plead guilty to a misdemeanor and receive a sentence of three years' probation in exchange for his testimony against defendant.

During defendant's trial, defense counsel objected to the admission of Garcia's statement "I'll do it," and Torres's statements that he would procure the gun and "It's time," on hearsay grounds. The trial court admitted the statements conditionally, subject to the prosecution's establishing a prima facie case of conspiracy without recourse to those statements.

During the charge conference, defense counsel requested that the court charge the jury that if they found that Castro was an

accomplice-in-fact, then his testimony must be corroborated. The court agreed, and so charged the jury over the prosecutor's objection. The jury acquitted defendant of murder in the second degree and manslaughter in the first degree but convicted him of conspiracy in the second degree.[1]

On appeal, defendant argues that the trial court erred in admitting, over his objection, the hearsay declarations of Garcia and Torres because the People failed to establish a prima facie case of conspiracy without recourse to those declarations. He contends that without the hearsay evidence, there is no evidence of an agreement to kill Ortiz and therefore the evidence was legally insufficient to establish his guilt of conspiracy. We disagree.

"A declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule (*People v Rastelli,* 37 NY2d 240, 244, *cert denied* 423 US 995)." (*People v Bac Tran,* 80 NY2d 170, 179 [1992].) "However, this evidence may be admitted only upon a showing that a prima facie case of conspiracy has been established." (*People v Bac Tran,* 80 NY2d at 179 [citations omitted].) "Of course, the determination whether a prima facie case of conspiracy has been established must be made without recourse to the declarations sought to be introduced." (*People v Salko,* 47 NY2d 230, 238 [1979], *rearg denied* 47 NY2d 1010 [1979].)

A prima facie case of conspiracy requires evidence "that a person, with intent that conduct constituting a crime be performed, agrees with one or more persons to engage or cause the performance of such conduct (*see,* Penal Law § 105.00)." (*People v Green,* 188 AD2d 662, 663 [1992], *lv denied* 81 NY2d 886 [1993].) Defendant argues that stripped of the hearsay, the trial evidence merely established that defendant wanted Ortiz killed, that he offered $5,000 to Garcia and others to have him killed and that three months later Garcia killed Ortiz. Relying on the Court of Appeals' decision in *Bac Tran* (80 NY2d 170 [1992], *supra*), defendant argues that this evidence did not establish a prima facie agreement between defendant, Garcia and Torres to kill Ortiz.[2]

In *Bac Tran* (80 NY2d 170 [1992]), the defendant Tran was

---

**1.** Garcia was originally a codefendant in the same indictment as defendant. However, his case was severed and he was tried separately. He was acquitted of all charges.

**2.** Defendant makes no argument that the People failed to make a prima facie showing of the "overt act" element of the crime of conspiracy (*see* Penal Law § 105.20).

the fire safety director of two Manhattan hotels with outstanding fire safety violations. An undercover investigator, posing as a building inspector, told Tran that one of his buildings had a violation, but also told him that he would hold off writing the violation for the rest of the day because he "wanted to help him out" (*id.* at 173). Tran urged the undercover investigator to return later, even if he (Tran) was not available. When the investigator returned, Tran was unavailable, but another hotel employee, Chu, who had been present during Tran's earlier discussion with the investigator, asked the investigator to wait for defendant. When the investigator said he could not wait, Chu gave him a $100 bill. When the investigator asked what the money was for, a hidden tape recorder captured Chu's response: "I don't know. Maybe, you clear up for him something here, about Local Law 16. That's what [*sic*] you're here before." (*Id.* at 174.)

The Court of Appeals held that the nonhearsay evidence did not establish a prima facie case of conspiracy since, absent the tape recording, there was no evidence of a conspiratorial agreement between Tran and Chu (*id.* at 179-180). The Court further ruled that unlike *People v Salko* (47 NY2d 230 [1979], *supra*), where the defendant made admissions "linking [himself] with the witness coconspirator" (*Bac Tran*, 80 NY2d at 179), there was no such nonhearsay evidence linking Tran and Chu. Rather, the Court ruled, the circumstantial evidence of an agreement was "weakly held together by 'subjective inferential links based on probabilities of low grade or insufficient degree' (*People v Cleague,* 22 NY2d 363, 367)." (*Bac Tran*, 80 NY2d at 180.)

The circumstantial proof of an agreement is far stronger here than in *Bac Tran* (80 NY2d 170 [1992]), and was sufficient to establish a prima face case of conspiracy to murder Ortiz. Unlike *Bac Tran*, where no evidence existed of any communication between the defendant and the coconspirator, here there are admissions from defendant's own mouth establishing that he offered to pay $5,000 for the murder of Ortiz to any one of several associates present at the March 18 meeting. This evidence provided a clear nexus linking defendant to Ortiz's murder. Additional evidence showed that in June 1995, Torres went into the building where defendant's stash house was located, Garcia exited shortly thereafter and Garcia walked directly to the park

where Ortiz was located. Garcia argued with Ortiz about defendant's drug "spot" and then shot him.[3]

Although defendant argues that there was never any admissible evidence establishing that Garcia or Torres accepted defendant's offer to murder Ortiz for $5,000, overwhelming circumstantial evidence demonstrates just the opposite. Defendant's own words establish a clear economic motive to have Ortiz killed. In addition, Garcia's and Torres's relationship to defendant as dealers in his drug business provide the strongest inference that they were acting on behalf of defendant (*People v Elias,* 163 AD2d 230, 231-232 [1990], *lv denied* 76 NY2d 985 [1990]). Additionally, since the murder was committed by one of the persons who attended the March 18 meeting (Garcia), with the possible involvement of two others who attended the same meeting (Torres and Castro), the conclusion is inescapable that Ortiz's murder was the direct result of defendant's March 18 offer. Moreover, the fact that Garcia murdered Ortiz immediately after arguing with him over defendant's drug spot is also powerful, confirmatory evidence of the March 18 agreement.

Because the crucial evidence of defendant's membership in the conspiracy is established by his own admissions (*People v Salko,* 47 NY2d at 240), and because strong circumstantial proof demonstrates that defendant's offer to pay $5,000 to murder Ortiz was accepted by one or more of his associates, the prosecution established a prima face case of conspiracy by independent evidence justifying admission of the coconspirators' statements (*see People v Elias,* 163 AD2d 230 [1990] [prima facie conspiracy established by defendant's clear motive to kill victim, his and an associate's offers to pay others to shoot victim and associate's actual commission of murder shortly after being seen with defendant]; *see also People v Berkowitz,* 50 NY2d 333, 341-342 [1980] [defendant's significant connections to drug transaction and ambiguous tape-recorded statements sufficient for prima facie case of conspiracy, despite no direct involvement]). Accordingly, since the evidence established the agreement element of the crime of conspiracy, defendant's legal sufficiency argument is rejected.

Defendant next contends that the trial court erred in failing sua sponte to instruct the jury that the witness Castro was an accomplice as a matter of law on the conspiracy count, thereby requiring that his testimony be corroborated (*see* CPL 60.22

---

**3.** Defendant did not object to the admission of Castro's testimony concerning the substance of the preshooting conversation between Garcia and Ortiz (*see* CPL 470.05 [2]).

[1]). Defendant concedes that his trial counsel requested that the issue of Castro's accomplice status be submitted to the jury as a factual question, and, therefore, his appellate claim is unpreserved for this Court's review (*see* CPL 470.05 [2]). Nevertheless, he argues that because trial counsel's failure to request an accomplice as a matter of law charge was an egregious error constituting the ineffective assistance of counsel under the Federal and State Constitutions, this Court should review the claim in the interest of justice (CPL 470.15 [3] [c]; [6] [a]).

We find that defendant's claim concerning the trial court's accomplice charge is unpreserved for this Court's review (*see People v McDuffie,* 288 AD2d 238 [2001], *lv denied* 97 NY2d 707 [2002]; CPL 470.05 [2]) and we decline to review it in the interest of justice.[4] Were we to review it, we would find no error in the trial court's accomplice instructions.

"The accomplice corroboration rule provides that a 'defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense' (CPL 60.22 [1])" (*People v Besser,* 96 NY2d 136, 143 [2001]). For purposes of the accomplice corroboration rule, the statutory definition of an accomplice is "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) [t]he offense charged; or (b) [a]n offense based upon the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2]).

Under this definition, a witness may be an accomplice for corroboration purposes even though such witness is not criminally liable for the offense being tried (*see* Penal Law § 20.00; *People v Berger,* 52 NY2d 214, 219 [1981]). The accomplice witness must however "be in some manner 'implicated in, and possibly subject to, prosecution for the general conduct or factual transaction on trial'" (*People v Dorta,* 46 NY2d 818, 820 [1978], quoting Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 60.22, at 194-195; *see also People v Cruz,* 291 AD2d 1 [2002], *lv denied* 97 NY2d 752 [2002]).

Where there is evidence at trial that a prosecution witness fits the statutory definition of an accomplice, a trial court has two options available: "[i]f the undisputed evidence establishes that a witness is an accomplice, the jury must be so instructed

4. During the charge conference, the court noted that "[t]he defense in this case has conceded that this court should not be instructing [the accomplice issue] as a matter of law," and defense counsel did not contradict this assertion.

but, if different inferences may reasonably be drawn from the proof regarding complicity, . . . the question should be left to the jury for its determination" (*People v Basch,* 36 NY2d 154, 157 [1975]).

Defendant argues that Castro's admissions that he (Castro) was employed in defendant's drug business, that he was present during the March 18 meeting when defendant announced the plan to murder Ortiz and that he acted as a look-out in the aborted attempt on Ortiz's life, made him an accomplice as a matter of law to the charged conspiracy to murder Ortiz. None of these facts convince us that defendant was entitled to an instruction that Castro was an accomplice as a matter of law.

At trial, Castro admitted that one day in mid-March, he participated with Torres and Butler, the latter armed with two guns, in an unsuccessful attempt to shoot Ortiz. More specifically, Castro testified that this incident occurred "[t]oward the middle of March," but the record is otherwise unclear as to the exact date. Therefore, the record does not conclusively establish whether Castro participated in the attempted murder of Ortiz after the March 18 meeting, when defendant initiated a conspiracy to kill Ortiz, or before it.[5]

The timing is significant because if the attempted murder occurred *prior* to the formation of the conspiracy in this case, then Castro's admissions would not constitute the necessary "undisputed trial evidence" that he participated in the charged conspiracy to murder Ortiz, or an offense based upon some of the same facts or conduct as the charged conspiracy (*People v Basch,* 36 NY2d at 157; *see also People v Manfredi,* 166 AD2d 460, 463 [1990], *lv denied* 76 NY2d 1022 [1990] [meeting was not overt act in furtherance of conspiracy, since at time it occurred, unlawful agreement was not yet in existence]). Indeed, Castro's participation in a criminal act prior to the formation of the charged conspiracy, even if perpetrated against the same victim who is the subject of the murder conspiracy, would be insufficient to render him an accomplice as a matter of law under CPL 60.22 (*see People v Cobos,* 57 NY2d 798, 801 [1982]).

Although a reasonable inference exists that Castro's participation in the attempted murder of Ortiz occurred after March 18, the reasonable possibility that it occurred before that date was sufficient to deny him accomplice as a matter of law status (*see*

---

5. Notably, in discussing the timing of Castro's participation in the attempted murder of Ortiz, the trial court noted that "[Castro] indicated [that the attempted murder occurred] on a prior occasion sometime in March and we don't know whether it's before or after the conspiracy was formed on March 18th."

*People v Besser,* 96 NY2d 136, 147 [2001] ["(a) witness is an accomplice as a matter of law only if the jury could reasonably reach no other conclusion but that he participated in the offense charged or an offense based upon the same or some of the same facts or conduct which constitute the offense charged"]).

The cases cited by defendant are distinguishable, and do not support his argument that Castro was an accomplice as a matter of law. In *People v Cona* (49 NY2d 26 [1979]), the accomplice-witness was a police officer who, in the midst of investigating a conspiracy wherein police officers solicited bribes from gamblers in exchange for police protection, ultimately joined the conspiracy as an active member. The Court of Appeals reversed the convictions of two officers, which were based on the uncorroborated testimony of the officer-accomplice, in light of the officer-accomplice's admitted participation in an "ongoing criminal enterprise" (*id.* at 35).

Here, in contrast, Castro admitted to participating in an attempted murder of Ortiz on an unspecified date in March 1995; he did not, as defendant argues, admit to participation in the conspiracy to kill Ortiz hatched by defendant on March 18. Castro's admissions are more akin to the situation where an accomplice witness admits to participation in criminal activity in some way related to the charged crimes, but where evidence is lacking concerning the witness's participation in the charged crimes, or an offense based upon the same facts or conduct as the charged crimes (*see People v Cobos,* 57 NY2d 798 [1982] [witness's participation in earlier robbery/assault of victim did not make him an accomplice to subsequent homicide committed by accomplices]; *People v Cruz,* 291 AD2d 1 [2002] [witness's participation in unsuccessful robbery/burglary of apartment did not make him an accomplice to murder committed a few hours later by accomplices at same apartment]). Although Castro's role in the aborted murder attempt and his presence at the March 18 meeting and June 1 murder did raise a factual issue as to his accomplice status, it did not make him an accomplice as a matter of law.

*People v Sweet* (78 NY2d 263 [1991]) is likewise inapposite. In *Sweet,* the Court of Appeals held that a cooperating prosecution witness was an accomplice as a matter of law based on her prior guilty plea to facilitating the robbery for which the defendant was being tried, notwithstanding her subsequent disavowal of complicity in the robbery during her trial testimony. The Court ruled that the witness could not create a factual issue as to her accomplice status merely by recanting her prior plea (*id.* at 267-268). In this case, Castro admitted to participating in an

attempted murder on an unspecified date, a crime not charged in the indictment against defendant. Since Castro's admission was not to the charged conspiracy, or a crime based on the same facts or conduct as the conspiracy, *Sweet* is not controlling here.

The dissent's assertion that the majority's analysis is based upon speculation overlooks the standard for an accomplice as a matter of law instruction. That standard requires such an instruction only where "the undisputed evidence" establishes that the witness is an accomplice (*People v Basch*, 36 NY2d 154, 157 [1975]). Here, with the date of the attempted murder unclear, and the other evidence concerning Castro's involvement equivocal at best, such undisputed evidence is lacking. In light of the ambiguities in the trial record and as to Castro's participation, the jury was appropriately given the opportunity to determine the factual issue of Castro's accomplice status, as specifically requested by defense counsel.

We also reject defendant's argument that trial counsel was ineffective in failing to request an accomplice as a matter of law charge. In evaluating an ineffective assistance of counsel claim, "[t]he core of the inquiry is whether defendant received 'meaningful representation.'" (*People v Benevento*, 91 NY2d 708, 712 [1998], quoting *People v Baldi* 54 NY2d 137, 147 [1981].) "To prevail on a claim of ineffective assistance, defendants must demonstrate that they were deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice." (*People v Flores*, 84 NY2d 184, 187 [1994].)

To the extent we may evaluate counsel's performance based on the trial record alone, we conclude that counsel's failure to request an accomplice as a matter of law charge was not inconsistent with the strategic decisions of a "reasonably competent attorney" (*People v Angelakos*, 70 NY2d 670, 674 [1987]). Defendant argues that in asking that Castro's accomplice status be submitted to the jury as a factual question, trial counsel "lost sight of the fact that by admitting membership in the on-going enterprise and the March attempt[ed murder of Ortiz], Castro was appellant's accomplice as a matter of law on the conspiracy count." However, as indicated, since the date of the attempted murder was never established in the record, thereby leaving open the possibility that Castro participated in criminal acts independent of, and unrelated to, the charged conspiracy in this case, counsel properly sought an accomplice-in-fact instruction (*see People v Vataj*, 69 NY2d 985, 986-987 [1987]).

Nor, under the unique circumstances presented, can we

conclude that counsel was ineffective in failing to clarify the date of the attempted murder. As the record now stands, counsel was able to successfully argue that Castro's participation in the attempted murder warranted the submission of his accomplice status to the jury. Had counsel, in an attempt to secure the more favorable accomplice as matter of law charge, sought to clarify the date of the attempted murder, he faced the substantial risk that Castro's answer might instead jeopardize defendant's entitlement to any accomplice charge. Such would have been the case where, in response to an attempt by defense counsel to clarify the date, Castro responded that the attempted murder occurred on a date prior to March 18, 1995, *before the charged conspiracy was formed*. In this circumstance, the prosecutor likely would have successfully convinced the court that Castro could not be considered an accomplice in any form because the attempted murder predated, and therefore was not based on the same facts or conduct as, the charged conspiracy. Since defendant has not elected to expand the record by way of a CPL 440.10 motion, which would afford us a basis to review trial counsel's tactics (*see People v Brewster,* 273 AD2d 181 [2000], *lv denied* 95 NY2d 889 [2000] [ineffective assistance of counsel claim based on decision to waive certain jury instructions not reviewable in absence of expanded record explaining counsel's strategic choices]), we cannot conclude that counsel was ineffective in failing to pursue a strategy so fraught with risk.

Defendant's challenge to the prosecutor's summation is without merit. While some of the prosecutor's remarks would have been better left unsaid, the court sustained the defense objections to most of the challenged comments, and the remaining remarks were fair comment based on the evidence and a proper response to the defense summation (*see People v Overlee,* 236 AD2d 133 [1997], *lv denied* 91 NY2d 976 [1998]; *People v D'Alessandro,* 184 AD2d 114, 118-119 [1992], *lv denied* 81 NY2d 884 [1993]).

The record does not establish that defendant's sentence was based on any improper criteria and we perceive no basis for a reduction in sentence.

Tom, J.P., concurs in a separate memorandum as follows: As noted by Justice Gonzalez and conceded by Justice Rosenberger in his dissent, the challenge to the court's charge regarding George Castro's status as an accomplice was unpreserved for review. Under the circumstances of this case, I would decline to review in the interest of justice and would affirm on that basis without reaching the issues which otherwise divide our bench.

This case involves the trial of defendant, who was the head of

a drug-selling operation in the Bronx and charged with ordering the murder of a rival drug dealer. The execution style killing of the victim, Angel Ortiz, took place in a park and in the presence of the four-year-old daughter of the victim's girlfriend. The victim was shot six times at close range with one of the bullet wounds to the back of his head. Castro, who witnessed the killing, testified in detail that defendant directed the killing of the victim. Defendant asserts on appeal that the trial court erred when it failed to instruct the jury that this prosecution witness was an accomplice as a matter of law, whose testimony required corroboration. Defendant seeks in the interest of justice review of this unpreserved issue. However, the very trial record developed by defendant undermines his procedural claim.

The record makes amply clear that defendant, through counsel, emphatically requested that the court charge the jury that they could consider whether Castro was an accomplice as a matter of fact. On the first day of the charge conference, there was extensive colloquy on the extent and nature of Castro's participation in the various events that Justice Gonzalez's opinion sets forth and how the evidence affected proof of the conspiracy charge. Counsel argued that Castro had admitted plotting with others to kill Ortiz on at least one occasion and that the "jury can draw a conclusion although he denied it that he was involved in the June 1st [*sic*], but the jury can draw a conclusion that in fact he was part of the conspiracy." The court, to clarify defendant's charging request, then asked "[s]o it's your position that I should submit a charge to the jury that they could assess as an issue of fact whether or not George Castro was a coconspirator and then of course the charge concerning what corroboration requirements if they so choose to find him a coconspirator was necessary. Is that your request?" Counsel answered affirmatively. The prosecutor objected. The court invited both parties to submit case law. When reconvening the following day, the court noted that "the defense . . . has conceded that this court should not be instructing this as a matter of law." The prosecutor argued that there was no evidence that Castro was an accomplice to the conspiracy being charged. Defense counsel responded that in the event of a dispute "as to the nature of a witness's participation and obviously we have a dispute here and it can be inferred both ways, it's up to the jury. It's properly left up to the jury's hands to make a factual determination whether that particular witness is an accomplice or not an accomplice. So I think that based upon the record we have here that the court should charge it. . . . So it's up to the jury at this point to make that determination." The court recited some of the relevant testimony that could support an

inference that Castro was an accomplice, and in this respect rejected the prosecutor's position, and also noted the lack of clarity regarding the relationship, if any, between the two attempts to kill Ortiz. The extensive colloquy regarding the testimony and how it affected the conspiracy charge also makes amply clear that counsel was making a strategic choice, and that the decision to submit the question to the jury did not result from an oversight. Insofar as defendant thus charted his own course, I do not see why he should be permitted on appeal to basically change his mind and seek a reversal on the basis that the court should not have allowed him to make that choice. Moreover, as a matter of common sense, if defendant argued for submission of the factual question to the jury, that necessarily implies defendant's acknowledgment that the jury could make findings one way or the other. Why should we now reverse course because the jury made findings that defendant ultimately does not like?

Moreover, with regard to whether Castro's participation in one aborted killing should be conflated with the charged conspiracy regarding the later successful killing, a close reading of the record, again, militates against reading into the record evidence that is not there in order to reverse. When Castro testified regarding his participation in the mid-March aborted killing, defendant had ample opportunity to try to achieve greater clarity as to the sequence of that crime and the March 18 discussion from which the conspiracy sprang. This was not done and as Justice Gonzalez notes, that could well have been a strategic decision, in that counsel possibly did not want to get an answer that eliminated his room to maneuver when turning to the issue of accomplice corroboration. In any event, I am reluctant to read into the silence of the record on this seemingly critical factor any speculation about the connection between the events for purposes of proving the conspiracy. We are left with defendant's strategic choices undertaken at trial, and a trial record that reflected those options, and the result of the jury's findings as it pertained to the admissibility of Castro's testimony regarding the conspiracy, and I would not grant defendant the opportunity on appeal to basically change his position in reliance on those very ambiguities in the trial record. In short, defendant should not be granted interest of justice review of an issue he rigorously requested to be given to the jury but now finds the jury verdict not to his liking.

Andrias and Rosenberger, JJ., dissent separately in memoranda as follows:

Andrias, J. (dissenting). I agree with Justice Rosenberger that

the witness Castro is an accomplice as a matter of law. However, I disagree that the trial court should have so charged the jury in the absence of a request for such a charge by the defense. Nevertheless, based upon the trial record, since no reasonable jury could have found to the contrary, the jury's factual finding that Castro was not an accomplice is against the weight of the credible evidence and defendant's conviction, which was based solely upon his uncorroborated testimony, should be reversed and the indictment dismissed.

Rosenberger, J. (dissenting). Hearsay declarations by a coconspirator made during the course and in furtherance of an alleged conspiracy may not be considered by a jury unless the prosecution has established a prima facie case of the alleged conspiracy without regard to the hearsay (*People v Rastelli*, 37 NY2d 240, 244 [1975], *cert denied* 423 US 995 [1975]). The majority concludes that the prosecution established a prima facie case of the alleged conspiracy independent of the testimony of George Castro, the alleged coconspirator, concerning declarations made by defendant. The majority further speculates that, rather than the conspiracy to commit murder charged in the indictment, Castro may have been an accomplice only in a separate conspiracy related to the earlier *attempted* murder of Ortiz. Neither contention is supported by the record.

The "independent" evidence of defendant's participation in the murder conspiracy on which the majority relies consists of defendant's "own admissions" and "strong circumstantial proof." However, as defendant did not testify, nor did he confess to participating in any conspiracy, there were no "admissions" by defendant. The only evidence of the alleged conspiracy— including the circumstantial "proof" cited by the majority— came from Castro's testimony as to the events allegedly leading up to the murder of Ortiz, events in which, according to Castro's own testimony, he participated.

The majority speculates that, because the record is silent as to precisely when in March the *attempted* murder occurred, it might have taken place before the March 18 meeting at which the murder conspiracy was hatched, and, if so, that the attempted murder was part of a separate and distinct conspiracy. Under this scenario, Castro may have been an accomplice in the attempted murder conspiracy but not in the conspiracy to commit murder, and, therefore, defendant was not entitled to an accomplice-in-law instruction to the jury. Nothing in the record supports such a fanciful construct.

The undisputed evidence in this case—the testimony of George Castro, the single witness to the alleged conspiracy—

establishes that Castro was present at the March 18 meeting where the conspiracy to kill Ortiz was first hatched; that Castro "acted as a lookout" in a foiled attempt by members of the conspiracy to murder Ortiz; and that, on June 1, the day the object of the conspiracy was consummated, he accompanied coconspirator Garcia as he proceeded to the park where Garcia shot and killed Ortiz. There is nothing in the evidence to suggest that there were two conspiracies, one related to the aborted murder attempt and the other concerning the successful murder. Rather, the evidence establishes that there was one conspiracy, the object of which was to kill Ortiz, and that Castro participated in the conspiracy. There is absolutely no evidence to support the majority's double conspiracy theory.

A witness "may be an accomplice for corroboration purposes if he or she may reasonably be considered to have participated in an offense based upon some of the same facts or conduct which make up the offense on trial" (*People v Berger,* 52 NY2d 214, 219 [1981]; *see also* CPL 60.22 [2]). If the undisputed evidence establishes that a witness is an accomplice in the conspiracy charged, the witness is an accomplice as a matter of law (*see People v Basch,* 36 NY2d 154, 157 [1975]), and the jury must be instructed that it may not convict the defendant solely on the uncorroborated testimony of that witness. Since, in my view, the undisputed evidence establishes that there was one conspiracy and that Castro was a member of, and thus an accomplice in, that conspiracy, the jury should have been instructed that he was an accomplice as a matter of law and that they could not convict defendant solely on the basis of Castro's uncorroborated testimony.

Although the error is not preserved, the failure of the court to give an accomplice-in-law instruction constitutes a fundamental error of law warranting interest-of-justice review. Such fundamental error, even if not of constitutional dimension, requires reversal of the judgment of conviction under the standards enunciated by the Court of Appeals in *People v Crimmins* (36 NY2d 230, 241 [1975]). *Crimmins* instructs with regard to nonconstitutional error that "every error of law (save, perhaps, one of sheerest technicality) is, *ipso facto,* deemed to be prejudicial and to require a reversal, unless that error can be found to have been rendered harmless by the weight and the nature of the other proof" (*id.; see also People v Bailey,* 58 NY2d 272, 278 [1983]; *People v Vadell,* 122 AD2d 710, 712 [1986]).

In this case, the only evidence of defendant's guilt was the uncorroborated testimony of an accomplice to the alleged crime. As a matter of law, that testimony is insufficient to convict.

Trial counsel's failure to request an accomplice instruction or to move to dismiss for lack of corroboration did not render the error harmless; it simply compounded the error.

Because there was no independent evidence of defendant's guilt, the judgment of conviction should be reversed and the indictment dismissed.